## COMMUNITY OF PRIESTS OF ST. BASIL v. BYRNE et al. (No. 336.) *

(Court of Civil Appeals of Texas. Austin. Nov. 21, 1921. Rehearing Denied Feb. 1, 1922.)

**I. Abatement and revival ⬅️72(10)—Successor and executors of Catholic Bishop properly substituted as plaintiffs in action on contract.**

Where a bishop holding land of the church in trust to him and his successors, conveyed it to a community of priests under contract for surrender and retransfer, the executors of the bishop and also his successor in office were properly substituted plaintiffs on his death in a suit for specific performance of contract to reconvey, though the successor was not a necessary plaintiff, under Rev. St. arts. 1886 and 1894; the church as beneficiary not complaining.

**2. Perpetuities ⬅️8(7)—Contract for retransfer, being one for charitable purposes, held not offending against rule denouncing perpetuities.**

Where bishop holding land for a church conveyed the same to a community of priests for school purposes subject to a certain incumbrance, a contract providing "that if at any time the said Community finds that it cannot open and maintain the said school the said Community shall surrender and retransfer the said property to the Catholic Church, * * * provided that the Catholic Church * * * refund to the Community * * * such portion of the original debt * * * as the said Community shall have paid," was merely an option to repurchase, and not a conditional limitation upon the title conveyed, and authorized a possible creation of a future estate in the grantor beyond the life or lives of any persons in being, but the contract, being one for charitable uses, did not offend against the rule denouncing perpetuities, under Const. art. 1, § 26.

**3. Perpetuities ⬅️8(1)—Rule does not apply to gift of charity.**

The rule against perpetuities does not apply to a gift of charity with no intervening gift to or for the benefit of a private person or corporation, or to a contingent limitation from one charity to another.

**4. Religious societies ⬅️20—Contract held to provide for retransfer of property for failure to continue to maintain school.**

Where land was conveyed by a church to a community of priests for the maintenance of a school, and the contract provided that if at any time the Community should find that it could not open and maintain the school it should surrender and retransfer the property, provided that the church should refund any portion of the incumbrance paid by the Community, there was no performance by the grantee, where it opened a school and maintained it for 15 years and then closed the school, and the church was entitled to a reconveyance.

**5. Religious societies ⬅️20 — Consent by church to sale of land by grantee held not waiver of right to damages for grantee not conducting school as agreed.**

Where a church conveyed property to a community of priests under a contract that it should be retransferred if grantee did not open and continue to maintain a boys' school in the city, consent by the church to a sale of such land by the grantee did not estop the church from maintaining suit for damages on the contract when the grantee ceased maintaining a school, where grantee at the time of the sale was maintaining the school on other property, and did not cease maintaining it until later, as breach of the contract did not occur until the school was finally closed, and no cause of action arose until then.

**6. Judgment ⬅️250—Plaintiff suing on contract cannot recover on different contract set up by defendant.**

Plaintiff, suing on one contract, cannot recover upon a different contract set up by defendant in the pleadings as the true contract, unless plaintiff's pleadings fairly embrace the contract set up by defendant.

**7. Associations ⬅️20(1)—Personal judgment not rendered against voluntary associations.**

A voluntary association of priests maintaining schools cannot be sued and a personal judgment rendered against it, but such an association may be bound where the plaintiff is entitled in equity to subject the general property, or some particular property of the association, to his claim, by virtue of an equitable lien or some character of trust.

**8. Religious societies ⬅️25—Church held not to have lien on property of community of priests maintaining schools.**

In an action by a Catholic Church against a community of priests maintaining schools to recover damages for breach of a contract to maintain a school, evidence held not to authorize a finding that plaintiff was entitled in equity to subject property of the defendant to its claim by virtue of an equitable lien or trust.

**9. Associations ⬅️20(1)—May be had against association.**

A judgment against an association for a fixed sum of money awarding an execution was authorized by Rev. St. art. 6149.

Appeal from District Court, McLennan County; H. M. Richey, Judge.

Action by Christopher Byrne, Bishop of Galveston, and others against the Community of Priests of St. Basil. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Sleeper, Boynton & Kendall, of Waco, for appellant.

J. D. Williamson and Allan V. McDonnell, both of Waco, for appellees.

BRADY, J. The Catholic parish of Waco, Tex., in December, 1898, purchased a lot in that city, for the purpose of establishing

and maintaining a school for boys. The deed to this property, pursuant to the custom of the Catholic Church, was taken in the name of Rt. Rev. N. A. Gallagher, Bishop of Galveston, his successors and assigns, but it is undisputed that the title was so taken in trust for the Catholic parish of Waco.

On or about June 14, 1899, after certain preliminary negotiations, a contract in writing was entered into, whereby the Community of Priests of St. Basil agreed to open and maintain a Catholic school for boys in such city. The contract contained the following provisions:

"1. That the property secured for school purposes by the Catholic Church in Waco shall be transferred to the said Community, subject to no other incumbrance than the debt of $3,-600.00, bearing eight per cent. interest per annum.

"2. That if at any time the said Community find that it cannot open and maintain the said school, the said Community shall surrender and retransfer the said property to the Catholic Church in Waco, in the person of Rt. Rev. N. A. Gallagher, Bishop of Galveston, or his successor as Bishop of Galveston; provided that the Catholic Church of Waco, in the person of the Bishop of Galveston shall at the same time refund to the Community of the Priests of St. Basil, or its representatives, such portion of the original debt of $3,600.00, bearing interest at eight per cent. per annum, as the said Community shall have paid."

This contract, as pleaded and proved by the defendant, appellant here, was signed by the provincial of the Community and by Bishop Gallagher. Pursuant to the contract, and at the direction of the Provincial, the property was conveyed to the Community in the person of Fr. Hayes and V. Marijon, provincial. The school was opened and maintained by the Community, but was closed at that location some time in 1902; and it appears that the property was thereafter rented. In May, 1906, the Community, through the persons named in the deed, sold and conveyed the property to one Isaac Simmons, with the consent of Bishop Gallagher, and the purchase price of $7,250 was paid to the Community. The school was continued on other property purchased by the Community until June 1, 1915, when it was closed, without the consent of the plaintiffs, who are appellees here.

It was claimed by the plaintiffs that the Community had used the proceeds from the sale of the property in question in paying the purchase price, or making improvements on property owned by the Community in University Heights addition to the city of Waco, and that plaintiffs thereby acquired a resulting trust lien on such property to the full amount and extent of the investment of proceeds therein.

The suit was for specific performance of the contract, asking a reconveyance to plaintiffs of the property at Eighth and Clay streets, or, in the alternative, for judgment for damages, with the fixing of an equitable lien on other property.

The answer of the defendant presented several defenses, which will be sufficiently indicated in the discussion of the questions considered here.

The cause was submitted to a jury on special issues, and the findings are to the following effect:

"(1) Defendant is not a voluntary association of persons organized for profit.

"(2) The contract set out in paragraph 4 of plaintiffs' second amended petition was not the contract agreed on by the parties.

"(3) The contract set out in Exhibit A of defendant's third amended answer was the contract agreed upon by the parties.

"(4) The school referred to in the contract between the parties was not opened and maintained by defendants within the meaning of the contract.

"(5) Defendant ceased to maintain the Catholic school for boys in Waco, within the meaning of the contract, in June, 1915.

"(6) When the property at Eighth and Clay streets was sold and the school at that place closed, Bishop N. A. Gallagher at that time understood and agreed upon the sale of the property at Eighth and Clay streets and the closing of the school at that place."

"(7) The Catholic Church at Waco through its pastor and trustees did not give its consent to the closing of the Catholic school at Waco by defendant.

"(8) Prior to the time when the property at Eighth and Clay streets was sold to Isaac Simmons, the Catholic Church through its pastor and trustees at Waco gave its consent to such sale.

"(9) The pastor and board of trustees of the Catholic Church at Waco were not authorized by the church to agree to the closing of the Catholic school for boys at Waco by defendant.

"(10) The pastor and board of trustees of the Catholic Church at Waco were authorized by the church to agree to a sale of the property at Eighth and Clay streets by defendant."

Upon this verdict the court rendered judgment for the plaintiffs against defendants, the Community of Priests of St. Basil, a voluntary association of persons, for the sum of $4,457.42, with interest at 6 per cent. per annum, and costs of suit. The court further adjudged a lien in favor of the plaintiffs on the lots of land in University Heights addition to the city of Waco, described in the petition. Pending the suit, the alleged lien was released by the plaintiff, who was then Bishop Gallagher, in order that the land might be sold free of the lien claimed, and a surety bond was executed to the bishop to protect any judgment recovered in this suit.

[1] The first question to be discussed is the claim that the trial court should have sustained exceptions to the petition presenting

the defenses that this suit was originally filed by Bishop Gallagher, for the use and benefit of the Catholic Church at Waco, and that neither his successor in office, Rt. Rev. Christopher Byrne, Bishop of Galveston, nor the plaintiffs Kelly and Kirwin, executors of the will of Bishop Gallagher, are the proper parties to revive the suit, but that the Catholic Church at Waco should through proper parties prosecute the action.

The two statutory provisions relevant to the consideration of this question seem to be articles 1886 and 1894, Revised Statutes. The first of these articles provides, in substance, that where a plaintiff shall have died before a verdict, if the cause of action is one that survives, the suit shall not abate, but the executor or administrator may be made a party plaintiff. Article 1894 is to the effect that where a plaintiff brings suit for the use of another, the suit shall not abate upon the death of the plaintiff, but may be prosecuted by the person for whose use the suit was brought.

It appears from the averments of the petition that Bishop Byrne was the successor in office to Bishop Gallagher, as Bishop of Galveston, and that the plaintiffs Father Kirwin and Father Kelly were the executors of the will of Bishop Gallagher. The contract was made in the name of Bishop Gallagher, and the contract provided that the Community should retransfer the property to Bishop Gallagher, or his successor in office, upon the happening of the contingency named in the contract. We are inclined to the view that, under article 1886, the executors were proper parties. The original deed having been made to the Catholic Church at Waco, in the person of Bishop Gallagher and his successors in office, and the contract for surrender and retransfer of the property conveyed to the Community being also in his name as Bishop of Galveston, and to his successor in office, it would appear that such successor would be a proper plaintiff, and also that the executors might properly proceed to prosecute the action. At all events, we think their presence in the suit as plaintiffs is not objectionable, especially as no complaint is made by the Catholic Church at Waco, which is the real beneficiary. They seem to have been made plaintiffs in an effort to comply with the provisions of article 1886, which, however, is a permissive statute.

We are also of the view that article 1894 is not mandatory, and that it was enacted to prevent an action instituted for beneficiaries from failing because of the death of the original plaintiff, and such statute merely permits the beneficiaries to intervene and prosecute the suit. The beneficiaries here are not complaining. We cannot see where any substantial right of plaintiffs was violated in permitting the suit to be prosecuted in the manner and by the parties plaintiff, named in the amended pleadings. The parties themselves have contracted with reference to the subject, and we do not think the latter article has the effect contended for by appellant. Therefore the assignment presenting this point is overruled.

While we have concluded that the case must be reversed for error in rendering judgment fixing an equitable lien in this cause, a question which will be hereafter considered, we think it proper to discuss other questions presented in the briefs, especially for the guidance of the trial court.

[2] In several forms it is contended by appellant that the clause in the contract requiring a surrender and retransfer of the property, upon the contingency named, is illegal and void, because a perpetuity is created within the meaning of section 26, article 1, of the Constitution and laws of this state. It is especially claimed that the contract is a mere option to purchase, and since it provides for the possible creation of an estate in the future, at a time beyond the period allowed by the rule against perpetuities, the contract is illegal and incapable of enforcement.

Appellees contend that such is not the nature of the contract, and that the clause in question is but a conditional limitation upon the estate transferred to the Community, and as such does not contravene the rule against perpetuities.

These conflicting claims invite exploration into a most interesting and difficult field of inquiry. There is a wealth of learning in the books on the subject, but the writer will resist the temptation to indulge in what would perhaps be excusable pedantry, and will merely state briefly the conclusions of the court.

We do not think the clause under consideration can properly be said to be conditional limitation upon the title conveyed, assuming that it would not offend against the rule prohibiting perpetuities, in case it could be construed as a conditional limitation. We do not find here a provision for cesser of the estate upon the happening of the contingency, and a reversion, ipso facto, to the grantor. The right to retake the property is itself contingent upon the refunding of any sum paid by the Community upon the incumbrance. The contract is free from ambiguity, and, in our opinion, constitutes no more than an option on the part of the bishop to repurchase the property in trust for the church. The contract does not substantially require him to refund the money, but this is left optional, and in such event only is the Community required to reconvey the property. Therefore we think the contract gave to the bishop no interest in the land, but merely an option to repurchase.

It is clear from the terms of the contract

that the option may be exercised at a time beyond the period prescribed by the rule against perpetuities. It authorizes the possible creation of a future estate in the grantor beyond the life or lives of any person in being and 21 years thereafter. Such being its possible result, it offends against the rule denouncing perpetuities. In this class of cases the contracts are held to be void. London & Swr. Co. v. Comman, L. R. 20 Chancery Div. 562. Illustrative American cases are: Starcher v. Duty, 61 W. Va. 373, 56 S. E. 524, 9 L. R. A. (N. S.) 913, 123 Am. St. Rep. 990; Winsor v. Mills, 157 Mass. 362, 32 N. E. 352; Dunaway v. Day, 163 Mo. 415, 63 S. W. 731; Gustin v. Union School District, 94 Mich. 502, 54 N. W. 156, 34 Am. St. Rep. 361; Hardy v. Galloway, 111 N. C. 519, 15 S. E. 890, 32 Am. St. Rep. 828.

[3] What has been said has reference only to an apparent violation of the general rule, and our constitutional provision against perpetuities, as against the claim that the clause in question creates a conditional limitation rather than an option in a contract. Appellees make the further claim that the rule against perpetuities does not apply here, because the contract is one for charitable uses, which case is a recognized exception to the doctrine of perpetuities.

In Hopkins v. Grimshaw, 165 U. S. 342, 17 Sup. Ct. 401, 41 L. Ed. 739, it was said:

"That rule [rule against perpetuities] does not apply to a gift to a charity, with no intervening gift to or for the benefit of a private person or corporation; or to a contingent limitation over from one charity to another."

That case contains a reference to a number of cases illustrating the exception. This seems to be the established rule, and it is stated in Cyc.:

"Where property is given on a charitable trust, with a proviso that on the happening of a certain event, it shall go over to a second charitable trust, the gift over to the second charitable trust is good, even though it may remain uncertain beyond the limits of the rule against perpetuities whether the event will happen."

And again:

"Property may be given on a determinable charitable trust; when the charitable trust so created terminates, there is a resulting trust to the heirs or next of kin of the person creating the trust." 30 Cyc. 1496, 1497E.

In the note the editor states that this resulting trust is analogous to a legal possibility of reverter.

In the present case the contracting parties must both be conceded to be charities, for it is generally held that a religious or educational institution, using its property for religious or educational purposes, is in the true legal sense a charity. The subject-matter of the contract here has direct relation to a charitable purpose. The gift is to a charity, and the clause authorizing the option to repurchase, upon conditions which, if exercised, causes a reverter to the grantor, is for the benefit of a charity. In principle, we see no difference between the facts of the present case and the instances cited which are recognized as exceptions to the rule against perpetuities. Therefore we sustain the contention of appellees that the contract here does not offend against the rule avoiding perpetuities.

We prefer to express no opinion upon the question as to whether, under our Constitution and laws, a contract, although unenforceable by decree of specific performance because violative of the constitutional provision forbidding perpetuities, will nevertheless support an action for damages in a court at law for the breach of said contract. In support of this proposition, an English case is cited, which is not accessible to us. We prefer to rest the decision upon the ground that the contract is saved from illegality because the estate created or made possible of creation in the future has direct and immediate relation to a charitable use. The assignments presenting the point just discussed are all overruled.

[4] The next question to be considered is the claim of appellant that the court should have sustained an exception to the effect that the allegations of the petition showed that the contract had been performed by appellant, and therefore no cause of action existed. The averments were that the school was maintained from June, 1899, to September, 1915. The contract provided that the Community should open and maintain the school, and, in the event it failed to do so, the property should be reconveyed, upon the conditions named. We hold with appellees that the allegations show the parties contracted for the continued maintenance of the school, or its termination, in the manner provided for in the contract, and that the school could be closed and the contract terminated only upon the terms and in the manner agreed upon between the parties. In principle, the following authorities cited by appellees are in point: H. & T. C. Ry. Co. v. Molloy, 64 Tex. 607; Tex. & St. L. R. R. Co. v. Robards, 60 Tex. 545, 48 Am. Rep. 268; Mosel v. S. A. & A. P. Ry. Co., 177 S. W. 1048; Texas & P. Ry. Co. v. City of Marshall, 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 385.

[5, 6] It is also asserted by appellant that, under the findings of the jury to the effect that Bishop Gallagher had agreed to the sale of the property to Simmons, appellees are estopped from maintaining suit for damages on the contract, and that any claim for damages was thereby waived. We think a sufficient answer to this contention is that

the contract did not require the school to be maintained on the premises in question, but simply that a Catholic school for boys should be maintained at Waco. It is true that the contract required a surrender and reconveyance of the property, with condition of reimbursement, upon the happening of the contingency of closing the school but the jury found that the school was not closed at the time of the sale to Simmons, and it was continued elsewhere until June, 1915. It is doubtful whether appellees could legally have objected to the sale of the property to Simmons, but at any rate there is nothing to indicate an intention to waive a claim for damages should the contract thereafter be breached by closing the school. Therefore the finding of the jury that consent was given to the sale is immaterial to the disposition of the case. The breach of the contract did not occur until the school was finally closed, and no cause of action arose until then. This also disposes of the contention that the action was barred by limitation.

[7] A further point raised in the briefs is that appellees relied upon the contract set out in their petition, and that appellant relied upon the contract attached as an exhibit to its answer; and that the jury found in favor of appellant on this issue. The proposition is that a plaintiff cannot sue on one contract and recover on another, and that the defendant may prove a different contract from that sued on by the plaintiff, and defeat a recovery.

To this it is replied: First, that the defendant itself set up, as the final contract between the parties, the contract found by the jury to be the true one, which was pleaded in confession and avoidance, and therefore cannot complain of a judgment rendered on such contract; and, secondly, that the contracts as pleaded were essentially the same, the differences being wholly immaterial; and therefore judgment was properly rendered upon the finding.

We cannot assent to the first of these propositions. It is doubtless competent for one party to rely upon the proof offered by his adversary to establish his allegations, but under our system of pleading, as interpreted by the Supreme Court, we do not think he may rely upon his adversary's pleading. The pleading here considered is in reality not one of confession and avoidance. It merely sets up the claim that a different contract was entered into between the parties, and that by reason of certain facts further pleaded there was no liability to plaintiffs. At all events, it is the right of a defendant to file as many inconsistent pleas as he chooses, and the plaintiff cannot introduce or rely upon such pleadings to support his case. The fact that the defendant has proven and the jury has found in favor of the contract so pleaded will not authorize judgment for the plaintiff, unless his own pleadings fairly embrace the contract so found. This we understand to be the logic of the decisions by our Supreme Court. Fowler v. Davenport, 21 Tex. 626; Duncan v. Magette, 25 Tex. 245; Silliman v. Gano, 90 Tex. 637, 39 S. W. 559, 40 S. W. 391; Bauman v. Chambers, 91 Tex. 108, 41 S. W. 471.

However, we do agree with appellees' contention that the two contracts as pleaded were substantially the same. While they vary in certain particulars, the differences are immaterial. We think the contract as found by the jury is fairly within the scope of the plaintiffs' pleadings, and that there is sufficient basis in the pleadings and proof for judgment on the contract so found.

[8] We next come to a consideration of the question upon which we have decided to reverse the case. As we have previously indicated, we are of the opinion that the court erred in rendering judgment in this case, establishing an equitable lien on the property in University Heights addition. It is the general rule that a voluntary association cannot be sued and a personal judgment rendered against it. This court so held in Methodist-Episcopal Church, So., v. Clifton, 34 Tex. Civ. App. 248, 78 S. W. 732, and a writ of error was denied by the Supreme Court in that case. However, it is recognized in the Clifton Case that such an association may be bound where the plaintiff shows himself entitled in equity to subject the general property, or some particular property of the association, to his claim by virtue of an equitable lien or some character of trust. Therefore the question arises: Does the evidence show such facts as will authorize a charge in equity against the general property of the Community, or the particular property upon which the lien was fixed? We have carefully considered the evidence set out in appellees' brief, and belive it insufficient to support the judgment. We take it that able counsel for appellees have cited all the relevant evidence.

It is found in the testimony of Fr. Ryan and Fr. Forster. The first testified as follows:

"We got for the property $7,250.00. After paying taxes, fees, etc., we got a check for something less than $7,000.00, which I sent to the Provincial Treasurer to be applied to the debt incurred in building St. Basil's College on the hill. I believe the loan to build the college was made by a mortgage on St. Michael's College, and I suppose the Provincial Council loaned the money to St. Basil's College for the purpose of building that institution."

Fr. Forster testified as follows:

"The Provincial and his council appealed to the Superior of St. Michael's College to loan

them a sufficient sum of money to build St. Basil's College."

Neither this evidence, nor any that we have found in the record, is sufficient to support the conclusion that there was any intention to charge the general property of the Community, nor to authorize the establishment of an equitable lien on the college property at Waco. At most, this evidence shows that the Community received the proceeds of the sale of the property at Eighth and Clay streets, and that the local treasurer at Waco sent the net proceeds to the Provincial Treasurer at Toronto, Canada, to be applied on the debt incurred in building the college at Waco. Assuming that the local treasurer was authorized to direct the application of the money, the proof is still lacking that the proceeds were applied to diminish the debt, and pro tanto discharge the mortgage. Appellees' counsel confidently states that, according to the testimony of members of the Community, the proceeds from the sale of the property at Eighth and Clay streets was used in payment of the mortgage or debt for the erection of the new school. The evidence cited in the brief, however, is wholly insufficient to sustain this statement.

[9] An examination of the judgment in the record also discloses that, after decreeing that the plaintiffs recover a fixed sum of money, an execution was awarded. The judgment in this respect is authorized by article 6149, Rev. Stat. The trial court is referred to the opinion in M. E. Church, So., v. Clifton, supra, for the principles determining the issues just discussed.

For the error indicated, the judgment will be reversed, and the cause remanded.

Reversed and remanded.