## MANETT–SEASTRUNK & BUCKNER v. TERMINAL BLDG. CORPORATION OF DALLAS. (No. 852.)

Court of Civil Appeals of Texas. Waco.
Dec. 12, 1929.

On Rehearing Jan. 23, 1930. Second Motion
for Rehearing Denied Feb. 13, 1930.

Read, Lawrence & Bates, of Dallas, for appellants.

Lee, Lomax & Wren, of Fort Worth, and Coke & Coke, of Dallas, for appellee.

BARCUS, J. Appellants entered into a written contract with appellee to do the electrical work on what is known as the Terminal Building in Dallas, for an agreed price of $78,645.50. Said contract provided that appellee would pay appellants on the 1st and 15th of each month 90 per cent. of the value of the work done and material placed on the ground, upon certificates issued by the architect. The contract further provided that appellee could order extra work done or make any changes in the original plans and specifications, and provided that the value of such extra work, where not agreed upon, should be determined: (c) By cost and percentage, or by cost and fixed fee; and provided that appellants as contractors "shall keep and present in such form as the architect may direct, a correct amount of the net cost of labor and materials, together with vouchers." The contract provided that, before the architect should issue a certificate for the payment of any sum due under the original plans and specifications, the contractor should submit to the architect an application for each payment, and, if required, submit receipts or other vouchers showing his payments for material and labor, and submit a statement based upon the original schedule, itemized in such form

and supported by such evidence as the architect might direct, and provides that the architect shall upon such proof issue to the contractor a certificate for such amount as he (the architect) decides to be properly due. The contract further provides that the architect could refuse to issue a certificate for several reasons, among others: (d) A reasonable doubt that the contract could be completed for the balance unpaid. Article 12 of the contract provides:

" * * * If the architect shall fail to issue any certificate for ten days after it is due, and the owner shall fail for twenty days after written notice of such fault by architect to have such certificate issued and the amount due thereunder paid * * * then the contractor may upon seven days written notice to the owner and the architect, stop work or terminate this contract, and recover from the owner payment for all work executed and any loss sustained upon plant, materials, materials contracted for, and reasonable profit on work completed to that date."

Under said contract appellants began work in the fall of 1923, and continued until October, 1925. During the construction of the building, a number of changes were made in the plans and specifications relative to the electrical work, which materially enhanced the cost thereof. Appellants presented at intervals twenty-two estimates prior to March 1, 1925, totalling $89,605.06, and same were paid, less $8,960.50, the 10 per cent. withheld under the terms of the contract. Between March 1st and July 9th appellants submitted their estimates 23 to 28, inclusive, each of said estimates for the total amount claimed by appellants to be due for work done and material furnished both under the original contract and for extra work. Neither of said estimates was approved by the architect, and neither of them was paid by appellee. During said time, however, appellee made payments to appellants on account as follows: April 5th, $5,000; June 8th, $3,000; and July 8, $5,369.66. The twenty-eighth estimate, being the last one filed by appellants with the architect, was dated July 9th, under which appellants claimed that there was due them, after allowing the credits for advancements above set forth, $27,986.64. Said estimates showed that the work called for in the original contract lacked $7,500 of being completed, and that the extra work called for by order No. 1 lacked $1,000 of being completed. It further showed that appellants had been paid for work done on the contract a total of $91,423.11. The architect refused to issue a certificate for any portion of said estimate. Appellants continued from the time they filed said estimate No. 28 on July 8, 1925, to work on said building until October 16th, claiming that during said time they did approximately $28,000 worth of additional work. On October 16th appellants ceased to work on said building, and abandoned their contract, claiming that appellee had breached its part of said contract by having refused to pay their estimate No. 28, as required under provision No. 12 of the contract, quoted above. The record shows that on September 5, 1925, appellants wrote appellee that the architect had refused to issue a certificate on their estimate No. 28, and demanded that appellee pay the amount of said estimate.

On October 9th appellants wrote appellee and the architect that, since estimate No. 28 had not been paid, they would, at the end of 7 days from said date, stop work and terminate said contract. In conformity therewith, appellants did on October 16th quit work, and on November 10, 1925, they instituted this suit against appellee to recover on quantum meruit for the work they had done and the material furnished in the installation of the electrical engineering work on said Terminal Building; appellant's theory being that, since appellee had breached the contract by failure to pay estimate No. 28, they could abandon the contract and recover from appellee the reasonable market value of the material furnished and the work done under the contract in its entirety, which they alleged to be $189,829.58, and on which they alleged they had been paid $95,415.16, and they asked for judgment for the unpaid portion to wit, $94,414.12.

Appellee contends that it was not in default in refusing to have the architect issue a certificate on estimate No. 28, or in refusing to pay said estimate, and contends that appellants were in no position to demand the issuance of a certificate on said estimate or the payment thereof, because they had failed and refused to submit either to the architect or to appellee the invoices showing the net cost price of labor or the material used for the extra work, and that by reason thereof there was no way for either the architect or for appellee to check and determine whether said estimate was correct or whether there was anything due thereunder. Appellee further alleged that, after appellants had abandoned their contract, it was required to and did complete the work called for under said contract at a cost of $8,000, and that it was entitled to retain said amount out of any sum which appellants might recover.

The cause was tried to a jury, and at the conclusion of the testimony the trial court indicated that he thought, under the undisputed facts, appellants were not entitled to recover on the cause as alleged for quantum meruit, but that he thought on equitable grounds they should, if possible, recover the $28,960.89 which appellee admitted was due them as the unpaid balance for the work done under the contract, after allowing appellee the amount it had been required to pay to complete said contract, and thereupon appellee filed a trial amendment, tendering said

amount to appellants, and the court then instructed the jury to return a verdict in favor of appellants against appellee for said amount, and judgment was entered in accordance therewith.

Appellants did not sue on the contract, and made no claim thereunder. Their sole contention is that appellee breached the contract by having failed to make a payment on their estimate No. 28, and that, since appellee did breach said contract, they had a right to abandon the same and sue on quantum meruit for the reasonable market value of the labor and material furnished in the construction of the work they had done. Appellants contend that the trial court should have as a matter of law instructed the jury that appellee had breached the contract, and that appellants were entitled to recover the amount sued for; and, in the alternative, they contend that the trial court should have submitted to the jury the question as to whether appellee had breached the contract, and, if so, the reasonable market value of the material and labor furnished by appellants on said work. We do not agree with either of appellants' contentions. The contract under which appellants were working provides specifically that, in determining the amount they are to be paid for labor and material furnished in doing extra work, they must keep and furnish to the architect the net cost of the labor and material used. Without this date it was impossible for the architect or appellee to determine what amount appellants were entitled to receive for the extra work done. At the time estimate No. 28 was submitted, appellants had received $91,423.11 on a contract which only called for, exclusive of the extra work done, $78,645.50. The record shows without dispute that the architect had for several months endeavored to obtain from appellants the invoices showing the net cost of the labor and material used on the extra work, and had endeavored to check the invoices furnished and the information given, and had not been able to determine said amount.

Appellants testified that they did not furnish appellee the invoices showing the net cost of the labor and material used on the extra work, prior to October 7, 1925, some 3 months after said estimate 28 was filed with the architect, and only 8 days prior to the time appellants abandoned the contract and refused to complete same. Appellants further testified that for the extra work done they had embraced in the estimates submitted from 20 to as much as 300 per cent. more than the actual net cost of the material that they had used in doing said extra work. Appellants pleaded that they had so kept their books that they were unable to tell what material and labor they had used in doing the extra work and what had been used in carrying out the original contract, and that they could not tell whether the amount claimed in their estimate No. 28 was for extra work, or whether it was partly for work done under the original contract.

The only portion of the contract which authorized appellant to abandon same because of breach thereof by appellee is embraced in article 12 before quoted, to the effect that, if the architect failed to issue a certificate for 10 days after it was due, and the owner failed for 20 days after written notice of such fault by the architect to have the certificate issued and the amount due thereunder paid, the contractor could then, upon 7 days' written notice, stop work and terminate the contract.

The cardinal rule in the construction of contracts is that same must be construed as a whole. Another cardinal rule is that one party to a contract is not justified in a breach or an abandonment thereof, unless he has either complied with his portion of the contract, or tenders performance thereof. 6 R. C. L. p. 944; 13 C. J. pp. 627, 648 and 662; 5 Page on Contracts, 4651. Page on Contracts, supra, uses this language:

"A contractor who has reserved the right to stop work in case of the failure of the owner to pay the installments then due under the contract, cannot take advantage of such breach of condition on the part of the owner if he himself has not performed the terms of the contract."

We think the clear intention of the parties to the contract involved herein was that neither the architect nor appellee was required to issue a certificate or pay an estimate for extra work, until and unless in connection therewith appellants furnished the net cost of the labor and materials used therein. Until said information was furnished, neither the architect nor appellee had any basis upon which to figure or determine whether there was anything due under the estimate claimed.

Appellant's theory is that, regardless of whether they furnished any information to the architect or appellee relative to the net cost of the labor and material used, they were entitled to have a certificate issued and paid for at least a part of the estimate claimed, regardless of whether there was anything due or not; their contention being that, if they did put in an estimate when nothing was due and appellee should then pay said estimate, after the work was all completed, and it should be determined they had received more money than they were entitled to, appellee could recover from appellants and their bondsmen for such sums as they had received over and above the amount they were entitled to. This, to our mind, would be indeed a strange doctrine and a very strained construction to be placed upon the contract, which provided specifically that appellee had

a right to, and, in order to hold the bondsmen, was required to, retain at least 10 per cent. of the amount due appellants until the contract was fully performed.

Appellants contend that they did as a matter of fact, on October 7, 1925, furnish appellee and the architect with the invoices showing the net cost of the labor and material used on the extra work, and that it was then appellee's duty to have the certificate issued and the amount due on estimate No. 28 paid, and that appellee's failure so to do justified them in abandoning the contract on October 16th. We cannot agree with this contention. While there is some evidence tending to show that appellants did furnish said information on October 7th, if as a matter of fact a full and complete invoice, giving said information, was furnished at said time, under the contract the architect had 10 days in which to check same over and allow or disallow the estimate, and appellee had 20 days thereafter in which to pay the estimate after it had been disallowed by the architect. Appellants in any event could not abandon the contract until the 30 days allowed appellee to pay same had expired after they had furnished the estimate and proof required in support thereof. Clearly appellants were not authorized to abandon the contract because estimate No. 28 was not approved and paid within 7 days after they furnished the invoices showing the net cost of labor and material used on the extra work.

We have examined all of appellants' assignments of error, and same are overruled. The judgment of the trial court is affirmed.

### On Motion for Rehearing.

Appellants in their motion for rehearing strenuously urge that the trial court was in error in permitting appellee, after all parties had closed their testimony, to file a trial amendment, admitting it owed appellants $28,960.89 under the original contract which it made with appellants, and in thereafter instructing the jury to return a verdict for appellants and entering judgment thereon for appellants for said amount. Appellants correctly state that their suit was not on the original contract made between them and appellee, but was based alone on quantum meruit for the work done and the material and labor furnished by them in the erection of the Terminal building. Appellants did not offer any evidence with reference to the amount that was or would be due them under the original contract, if they had not abandoned same. Appellees in the trial court based their defense alone upon the right of appellants to abandon the contract and recover on quantum meruit. There is evidence in the record which, if uncontested, was sufficient to authorize the trial court to determine the amount due appellants under the original contract. Said issue was not, however, fully de-veloped, evidently on the theory that appellants were not seeking a recovery under the contract. It appears from the record that the trial court, after the testimony had closed, suggested that he thought on equitable grounds appellants should recover at least the amount appellee admitted owing them under the terms of the contract, and the trial court made the suggestion that appellee file a trial amendment tendering said amount to appellants, in order that he might instruct the jury to return a verdict for appellants for said amount, the record showing that the trial court in connection therewith stated that he was of the opinion, and so held, that appellants were not entitled to recover under the cause of action as alleged by them, seeking a recovery on a quantum meruit basis. While the trial court was apparently trying to help appellants, he had no right as a matter of law to permit appellee to file said trial amendment and then require appellants to accept said amount in satisfaction of the amount that might be due them under said contract, over the timely objection urged by appellants that they were not seeking a recovery on the contract and had offered no evidence in reference thereto, and did not desire to be bound by any judgment rendered by the trial court on a basis of a recovery on the original contract. The defendant cannot under our procedure allege a cause of action for the plaintiff and require plaintiff to recover thereon. It is the fundamental law of this land that plaintiff must recover, if at all, upon the cause of action as alleged by him. Community of Priests of St. Basil v. Byrne (Tex. Civ. App.) 236 S. W. 1016; Saner-Whiteman Lumber Co. v. T. & N. O. Ry. Co. (Tex. Com. App.) 288 S. W. 127.

We sustain appellants' assignments of error and propositions thereunder relating to the action of the trial court in permitting appellee to file its trial amendment admitting it owed appellants under the original contract the sum of $28,960.89, and agreeing that the court should enter judgment against it for said amount, and to the action of the trial court in entering judgment thereon.

This does not, however, necessitate a reversal of the judgment of the trial court. The judgment as entered by the trial court specifically adjudges that appellants are not entitled to recover on their cause of action based on their pleadings, and definitely adjudicated that appellants should not recover against appellee thereon. For the reasons stated in our original opinion, we think the trial court was correct in said holding and judgment. The judgment of the trial court will be reformed to the extent that its judgment of $28,960.89 for appellants will be eliminated therefrom, and judgment will be entered that appellants take nothing, and, as so reformed, the judgment of the trial court will be affirmed.

Appellants in their motion for rehearing ask for additional findings of fact, and challenge the findings of this court in certain respects. In response thereto we make the following additional findings:

The contract made between the parties provided different methods for ascertaining the amount due appellants under the original contract and that due for extra work. For work done under the original contract, article 4 thereof provides:

"On the 1st and 15th of each month, ninety per cent. of the value proportionate to the amount of the contract, of labor and material incorporated in the work, and of material and work suitably stored at the site thereof and at places to be agreed on adjacent or close thereto between the parties hereto, up to the preceding 1st and 15th days of the month, respectively, as estimated by the architect and on certificates furnished by the architect to the owner not less than eight days before the due date of payment, less the aggregate of previous payments, and upon substantial completion of the entire work a sum sufficient to increase the total payments to ninety per cent. of the contract sum."

Article 6 of the general conditions of the contract provides for making changes and for doing extra work, and provides:

"The value of any such extra work or changes shall be determined in one or more of the following ways: (a) By estimate and acceptance in a lump sum; (b) by unit prices named in the contract or subsequently agreed upon; (c) by cost and percentage or by cost and a fixed fee; (d) if none of the above methods is agreed upon, the contractor, provided he receives an order as above, shall proceed with the work, no appeal to arbitration being allowed from such order to proceed. In cases (c) and (d) the contractor shall keep and present in such form as the architect may direct, a correct amount of the net cost of labor and the materials, together with vouchers. In any case, the architect shall certify to the amount due to the contractor pending final determination of value. Payments on account of changes shall be made on the architect's certificate."

It was admitted that the value of the extra work was not fixed under either subdivisions (a) or (b) as provided in article 6 above.

E. F. Manett, one of appellants, testified that estimate No. 28 embraced extra work done on the building. He did not, however, testify it was all for extra work. He further testified:

"Somewhere down the line from the time I first began to render those invoices to the present time, I have seen those invoices that I submitted to the architect in connection with my estimate, and I don't think those invoices anywhere show what that material cost us. It don't show the net cost to us. So far as our firm is concerned, I don't know of any information in the form of paid bills showing the cost of material that was ever presented to Thornhill (the assistant architect). * * * In connection with the check that I made with Mr. Thornhill of our invoices, I never carried him any payrolls to show him what we were paying the men."

Appellant Manett further testified that the invoices they furnished the architect and Terminal Building Corporation for the material used and the extra labor did not show what said material cost them, but showed what appellants were charging the Terminal Building Corporation therefor. He further testified:

"While Mr. Buckner and I were talking with Thornhill we put him on notice before we ever started checking, that we would not stand for any cut prices. In other words, before we started any check with Thornhill we put him on notice that we would not stand for any cut in our unit prices, and I think Mr. Seastrunk later voiced that same sentiment, which made it unanimous. * * * In connection with the check that I made with Mr. Thornhill of our invoices, I never carried him any payrolls to show what we were paying the men."

Appellant Mr. Seastrunk testified that the invoices which appellants prepared and furnished the architect and the Terminal Building Corporation showed that they were charging the Terminal Building Corporation as high as 300 per cent. for some of the material furnished, over and above what it actually cost them. Under his testimony, a great deal of the material was charged to the Terminal Building Corporation at 60 to 300 per cent. more than the actual net cost to them. He further testified:

"So far as receipted bills are concerned, the bills we furnished finally showing the costs on the materials were never marked 'Receipted' until just about eight days before we quit the job. * * * When I say that I furnished invoices showing the net cost to the Terminal Building Corporation, I mean I just furnished invoices showing what we were going to charge them. At that time (when estimate No. 28 was submitted) we did not furnish invoices or give them any information what the materials shown on the invoices cost us."

"In the rechecking that was done it was also shown that we had billed the Terminal Building Corporation for a total of $35,653.43 and it was determined from the joint check that that labor cost us $18,826.16. In other words, the total of labor billings was approximately ninety per cent. above cost."

Appellants' motion for rehearing is granted in part. The judgment of the trial court on rehearing is reformed, and, as reformed, is affirmed. All costs of appeal are taxed against appellee.