## MANETT, SEASTRUNK & BUCKNER v. TERMINAL BUILDING CORPORATION.

No. 5717.   Decided May 16, 1931.
(39 S. W., 2d Series, 1.)

*Read, Lowrance & Bates,* for appellants.

*Lee, Lomax & Wren* and *Coke & Coke,* for appellee.

MR. COMMISSIONER LEDDY delivered the opinion of the court.

Plaintiffs in error entered into a contract with the defendant in error to do all of the electrical work required under the plans and specifications for what is known as the Terminal Building, in the city of Dallas, for the agreed sum of $78,654.50. It was stipulated that defendant in error was given the privilege under the contract of ordering extra work, or of making any changes in the original plans and specifications; with the provision that if the value of such work or alteration was not agreed upon, it should be determined in one or more of the following ways:

"(a) By estimate and acceptance in a lump sum;

"(b) By unit prices named in the contract or subsequently agreed upon;

"(c) By cost and percentage or by cost and a fixed fee;

"(d) If none of the above methods is agreed upon, the contractor, provided he receives an order as above, shall proceed with the work, no appeal to arbitration being allowed from such order to proceed.

"In cases (c) and (d), the contractor shall keep and present in such form as the architect may direct, a correct amount of the net cost of labor and materials together with vouchers. In any case, the architect shall certify to the amount due the contractor. Pending final determination of value, payments on account of changes shall be made on the architect's certificate."

Plaintiffs in error began work under this contract in the fall of 1923 and continued working thereon until October, 1925. The 28th estimate furnished by them to the architect was presented on July 9, 1925. Under this estimate they claimed defendant in error was due them, after due allowance for all credits, the sum of $27,986.64. After filing this estimate, they continued working on the buildings until October 16, 1925, claiming that during this interval they did additional work of the approximate value of $28,000. On October 16, 1925, plaintiffs in error, after giving notice of their intention to do so, in accordance with the terms of the contract, abandoned work thereon because of failure of defendant in error to pay their estimate No. 28.

They instituted this suit to recover on a quantum meruit the value of the labor performed and material furnished in the installation of the electrical work on said Terminal Building, which they claimed amounted to the sum of $189,829.28, on which they admitted a credit for payments in the sum of $95,415.16, and judgment was sought for the remaining portion of the amount of $94,414.12.

Defendant in error contended upon the trial that it was not in default in refusing to pay plaintiff in error's estimate No. 28, or to have the architect issue a certificate on such estimate for the reason that plaintiffs in error had failed and refused to submit, either to it or to the architect, the invoices showing the net cost price of labor and materials used for the extra work, and that by reason thereof there was no way for it or the architect to determine correctly the amount due plaintiffs in error under their estimate.

When the evidence was closed, both parties presented requests for peremptory instructions. Plaintiffs in error requested the submission of a number of special issues in line with the cause of action set up in their pleadings, such requests being conditioned upon the refusal of their summary instruction. The trial judge indicated to the parties that he was of the opinion that plaintiffs in error were not entitled to recover under a

quantum meruit, but that he thought on equitable grounds they should be permitted to recover the sum of $28,960.89, which it seems defendant in error admitted was due by them as the unpaid balance for the work done under the contract after allowing the amount it had been required to pay to complete the contract.

When the above suggestion was made by the court, defendant in error immediately filed a trial amendment, which, after reciting the views of the court as above expressed, alleged that "without prejudice otherwise to its insistence that a verdict should now be directed for it, this defendant admits that under the contract referred to in plaintiffs' petition, if such contract had not been breached by plaintiffs, they would be entitled to recover the sum of $28,960.89. And this defendant concedes that the jury may be instructed to return a verdict for like amount with interest thereon only from this date, however, may be entered in favor of plaintiffs and against this defendant."

Upon the filing of the above pleadings, the court overruled the motions for peremptory instructions requested by both parties, as well as all special issues requested by plaintiffs in error, granted the request contained in defendant in error's trial amendment and instructed the jury to render a verdict in favor of plaintiffs in error for the sum stipulated. Judgment upon the verdict rendered in accordance with said instruction was duly entered.

The Court of Civil Appeals upon original hearing affirmed the judgment of the trial court. Later it granted plaintiffs in error's motion for rehearing and reformed the judgment so as to eliminate the amount awarded plaintiffs in error, and rendered judgment that they take nothing on their claim against defendant in error. 23 S. W. (2d) 786.

The acount of the Court of Civil Appeals reversing the judgment for the amount admitted to be due under defendant in error's trial amendment was undoubtedly proper. Plaintiffs in error were entitled to a trial upon the cause of action set up in their pleadings. They could not be compelled, over their protest, to have their rights adjudicated upon a theory pleaded by defendant in error in its trial amendment. The only legal effect that could be given defendant in error's trial amendment was that of an offer in the nature of a compromise. If it had been acceptable to plaintiffs in error the court's action in directing verdict for that sum would have been entirely proper. Defendant in error, however, had no legal right to force upon plaintiffs in error, over their protest, the acceptance of the compromise proposal.

This brings us to a consideration of the correctness of the action of the Court of Civil Appeals in rendering judgment against plaintiffs in error. In order to decide this question, we must determine whether plaintiffs in error under their pleadings and evidence presented any issues

which they were entitled to have submitted for the determination of the jury.

Plaintiffs in error alleged in their petition that there was collusion between the architect and the Terminal Company to defraud them by arbitrarily reducing the cost of the buildings and that plaintiffs in error were influenced thereby in their decision to stop work under their contract.

It was further alleged by them that defendant in error waived all of its rights under the contract and was estopped to rely upon any provision thereof because in designating L. R. Whitson as architect it breached said contract in view of the provision contained therein with reference to the architect that "as the architect is in the first instance the interpreter of the conditions of the contract and the judge of its performance, *he shall side neither with the owner nor with the contractor, but shall use his powers under the contract to enforce its faithful performance by both* because it is well known that the said Whitson had a financial interest in the Terminal Company and *was financially interested in reducing the cost of such construction at the expense of the contractor;* that stock to the amount of $70,000 in the defendant Terminal Building Corporation of Dallas had been issued to him, and he had been elected a director of defendant and that he could not be a disinterested interpreter of the conditions of the contract or judge its performance, which facts were unknown to plaintiffs and if they had been known to them, plaintiffs would not have accepted said contract with L. R. Whitson as architect."

Plaintiffs in error further alleged:

"The defendant waived all provisions in said contract conferring arbitrary powers on the architect and making him the interpreter of all its conditions and the judge of its performance by designating L. R. Whitson as the architect, well knowing at that time that he was a stockholder and director of defendant company and *was interested financially in reducing the cost of said buildings at the expense of the contractor, which facts were unknown to the plaintiffs."*

It was shown upon the trial that Whitson, who was designated as the architect by the Terminal Company, was one of four promoters who organized the Terminal Building Corporation, and that stock in said company had been issued to him in the sum of $70,000 at the time said company entered into the contract with the plaintiffs in error to install the electrical work in said buildings. In addition to this fact, it was also shown that Whitson and his associate promoters in the year 1923 executed an instrument in writing wherein they guaranteed the Terminal Company that the cost of the buildings would not exceed the estimate made by Whitson, with the distinct understanding that if such estimate was exceeded they would pay said company the sum of $50,000.

It appears that there was a very large amount of extra work and quite a number of changes in the plans and specifications required to be

performed by plaintiffs in error, for which the contract provided no fixed amount of payment. During the performance of the contract the price of extra work performed under the contract, as well as the amount of regular work (estimates for which payments were to be made to plaintiffs in error), was determined by agreement between them and the architect. Under the plain provisions of the contract plaintiffs in error were entitled, in fixing the prices for extra work and in determining the amount of the estimate for work required under the plans and specifications, to deal with a disinterested and unbiased architect. That Whitson was not such an architect is self-evident. He had a two-fold interest in reducing the cost of the construction of the buildings. First, his stock in the enterprise would be affected by the cost of the buildings; and secondly, he had, on account of the previously guaranty made by him, a direct financial interest in keeping the cost of the buildings within his estimate.

But, defendant in error insists that plaintiffs in error are not in position to make the complaint that Whitson was not a disinterested architect because they knew at the time the contract was signed, or learned a short time subsequent thereto, that Whitson was a stockholder and director of the Terminal Company, and, with full knowledge of such fact, entered into the performance of the obligations of the contract. Plaintiffs in error denied that they possessed such knowledge, but there was some evidence tending to show that each of them knew that Whitson was a stockholder and director in the Terminal Company before they engaged in the performance of their contract. There is, however, no evidence in the record tending to show that plaintiffs in error had any knowledge whatever of the fact that Whitson had executed a written contract wherein he guaranteed that the cost of the buildings would not exceed the amount estimated by him and agreed in the event it did he and his associates would pay the Terminal Company $50,000, with the pledge of his fees as architect to secure the payment of such sum.

It may be conceded that plaintiffs in error would not be in position to complain that Whitson was not a disinterested architect as contemplated by the provisions of the contract, if they had knowledge of all the facts as to his interest in reducing the cost of the buildings at the time they engaged in the performance of their contract. It does not follow, however, that because they knew he was a stockholder and director in the Terminal Company they waived their right to complain of his disqualification to act as such architect, if in addition to being a stockholder and director, he had obligated himself to pay the Terminal Company a substantial sum in the event the buildings exceeded the estimated cost and they had no knowledge of such fact. Plaintiffs in error should not be held to have waived their right to complain of Whitson serving as the architect under the contract, in fixing the amount due them for extra work, and the amounts of the estimates to be paid during the progress

of the work, unless they were fully apprised of all the facts with reference to his financial interest in reducing the cost of the buildings. Plaintiffs in error may have been perfectly willing to have waived his connection with the Terminal Company as a stockholder and director, and yet not have been willing to engage in the performance of their contract had they known he was bound under a written guaranty to pay a substantial sum of money if the buildings exceeded the estimated cost. Because of this guaranty he had a very strong motive to keep down the cost of the buildings in order to bring them within the estimate and thus relieve himself of having to pay the Terminal Company a substantial sum of money. His interest in this respect was much greater than that of a mere stockholder and director.

It must be held that defendant in error in designating a biased and interested architect breached its contract which required it to name a disinterested and impartial one. Plaintiffs in error did not waive such breach, merely because they knew the architect was a stockholder and director in the Terminal Company. They will not be deemed to have waived their right to object to a biased architect any further than their knowledge as to the basis for such bias extended.

Defendant in error claims that if its designation of Whitson as architect was subject to objection as not being in compliance with the terms of the contract on account of his direct financial interest under the written guaranty given to it, such objection was removed when he was fully released by the assumption of his liability by the company which financed the construction of the buildings. We conclude, however, that the fact that the architect was released of liability under the guaranty in the early part of 1925 is no answer to plaintiffs in error's contention. All of the estimates made by Whitson during the year 1924, both in the fixing of the cost of the extra work and in estimating the amount plaintiffs in error were entitled to be paid for work required by the plans and specifications, were made at a time when the architect was bound by the terms of his guaranty to indemnify the Terminal Company if the cost of the buildings actually exceeded the estimated cost. Because of the direct pecuniary interest of the architect the presumption arises that every estimate made by him while under such liability was a partial and biased one. Long v. Pierce County, 22 Wash., 330, 61 Pac., 142.

The rule is announced by Corpus Juris, vol. 9, p. 730, that a provision vesting power in an architect to determine disputed questions arising under the contract is invalid where unknown to the builder the architect gives a bond to keep the cost below a certain sum and thereby becomes interested in reducing the cost of the building.

The same principle is announced in Long v. Pierce, above cited. There a building contract provided that the decision of the architect upon disputed questions should be just, impartial and conclusive. It appeared that

prior to the beginning of the work the architects executed a bond to the county conditioned that they would keep the cost of the building below a certain sum. The court held that the contractor was not bound by the architects' decision under such circumstances, and in passing on the question said: "It is an ancient maxim applicable to arbitration as well as judges of the courts that no man ought to be a judge in his own cause. The cause of the county became by reason of his bond the cause of the architect and the liability assumed by them made it to their interest to decide every question affecting the cost of the building against the claims of the contractors. Bias and prejudice will always be implied where such condition exists; it was not necessary for the contractor to show that the architects' decisions were unjust or partial in order to relieve himself of their conclusive effect if it be a fact that he had no knowledge of the bond at the time he entered into the agreement making him so."

To the same effect is the leading English case of Kemp v. Rose, 1 Giffard, 258, 65 Reprint, 910, wherein in deciding a case involving a similar situation the court observed: "The existence of any circumstance calculated to bias the finding of an architect unknown to either of the parties who have submitted to his decision is a sufficient ground for the interference of the court. Therefore, where a builder by his contract bound himself to abide by the decision and certificate of an architect as to the amounts to be paid for the work, not knowing that the architect had given an assurance to the employer that the cost of the building should not exceed a certain specified amount, although he refused to guarantee that amount, the court did not consider the decision of the architect made under such a bias as binding, but gave direction so as to ascertain under the authority of the court how much remained justly due to the plaintiff."

In the last cited case the trial court was directed to determine the amount due plaintiff under a quantum meruit. The only interest of the architect was that he had given his assurance to the owner of the building that the cost of same would be kept below a specified sum without any financial guarantee upon his part. In this case the architect was under a binding contract which penalized him if he failed to keep the cost of the buildings within his estimate. That the contractors in this case should be compelled to adjust disputed questions as to proper allowances for labor performed and material furnished with such a biased architect is manifestly unfair and unjust.

We are unable to agree with defendant in error's insistence that plaintiffs in error's pleading is not sufficient to raise the issue as to the financial interest of the architect by reason of his having executed a guaranty to keep the cost of the buildings within his estimate. It was distinctly alleged that defendant in error had waived the provision with reference to the powers given the architect under the contract and had breached said

contract by designating said Whitson as architect because "it well knew that the said Whitson had a financial interest in the Terminal Company *and was financially interested in reducing the cost of said construction at the expense of the contractor."* No special exception on account of its generality was levelled at this allegation. While subject to such exception, it was clearly sufficient, when considered in connection with the allegations as to fraud and collusion between the architect and defendant in error, as against a general demurrer. The pleadings were sufficient to furnish a proper predicate for plaintiffs in error's proof as to the financial interest of the architect.

We conclude that the provisions of the contract providing for the fixing by the architect of the price of extra work and of determining the amount due for work under the contract as it progressed were invalidated by reason of the financial interest of the architect to reduce the cost of the buildings. With these provisions of the contract eliminated, there was no method of determining what amounts were properly due plaintiffs in error as the work progressed, nor what sums should be allowed and paid them for extra work. Under these circumstances plaintiffs in error had the right to abandon performance of the contract as they did and seek the aid of a court for the purpose of determining the reasonable value of the labor performed and material furnished by them in the construction of said buildings.

Plaintiffs in error are entitled upon another trial to have submitted for the determination of the jury the amount due them by defendant in error as under a quantum meruit for all labor performed and material furnished in the construction of said buildings, after due allowance has been made for all sums heretofore paid them.

Our holding is made upon the record before us and should not be construed as confining the submission of the case on another trial to the above issue, as amended pleadings or additional proof may require the submission to the jury of other controverted issues.

The judgments of the trial court and the Court of Civil Appeals are reversed and the cause remanded for another trial.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. CURETON, Chief Justice.