The opinion of the Commission of Appeals is adopted, and the petition for writ of prohibition is dismissed.

**AMERICAN SURETY CO. OF NEW YORK**
**et al. v. SHAW et al.**
**No. 1416—6244.**

Commission of Appeals of Texas, Section B.
March 14, 1934.

48

Murphy W. Townsend and R. G. Scurry, both of Dallas, for plaintiffs in error.

W. H. Flippen, of Dallas, John T. Gano, of Houston, Callaway & Reed, Frank A. Loftus, W. C. Scurry, Coke & Coke, and B. O. Baker, all of Dallas, and Lee, Lomax & Wren, of Fort Worth, for defendant in error.

RYAN, Judge.

The record in this case is very voluminous, and in the interest of as much brevity as possible in this opinion, we refer to the statement by the Court of Civil Appeals. 47 S. W. (2d) 474.

From such statement, as well as the record, which we have carefully examined, we gather:

1. The Terminal Building Corporation of Dallas, as owner, on or about August 25, 1923, contracted with Watson Company for the construction of a building in the city of Dallas, known as the Santa Fé Building.

The American Surety Company was surety on the bond of Watson Company to the Terminal Building Corporation, assuring performance of the contract.

2. Watson Company sublet the brick, cement, stone, concrete, and masonry work to C. L. Shaw, the plastering to George W. Blue and H. G. Pittman (Blue & Pittman), and contracted with Lyle Clapper and Leland Clapper (Standard Concrete Tank Company) to provide and erect in place, and remove, after being used, all necessary forms for the concrete work.

3. After due time the building was completed, according to plans and specifications, on December 14, 1925, and no questions are here presented as to the quality of the work done under the contract.

4. After the building was completed, controversies arose as to amounts under their contracts and for extra services, due to the various contracting parties, payment for which was delayed, and this suit involves only the amounts due for interest, as damages, on said amounts due, during the period of such delay, extending more than two years, which delay was charged to dilatoriness, unfulfilled promises, and wanton disregard of the contractors' rights on the part of the owner and Watson Company.

5. Alleging full performance of their respective subcontracts, Shaw as plaintiff and Blue & Pittman and Standard Concrete Tank Company as interveners, sued Watson Company as general contractor, its surety, the American Surety Company of New York, and the Terminal Building Company, owner, to recover interest that accrued on the principal sums due them during the time payments were delayed.

6. The position of Shaw is that such wanton delay in making prompt settlement, thus depriving him of the use of his money, constituted a tort; the measure of damages therefor being interest for the period of time during which he was denied such use. He alleged also that he finished his work on December 14, 1925, which was accepted by the architect on December 15, 1925, wherefore the amounts stipulated then became due, and that on January 5, 1927, the owner fully accepted his work under the contract and for extras, wherefore such amounts then became due and he was entitled to legal interest thereafter.

7. Blue & Pittman's allegations are similar to those of Shaw; their work was completed on November 24, 1925; interest was claimed

on amounts due for extra work and material from that date, and on work and material furnished under their contract, from sixty days after such completion. They alleged, in addition, broken promises and dilatory tactics on the part of the owner and of Watson Company, also a conspiracy between them and the architect of the building, who it was stated was a stockholder and pecuniarily interested in its ownership and in the payment of material and labor bills thereon, as a result of which, acceptance of their work and payments therefor were delayed until February 7, 1927, but no payment was made thereon until August 2, 1927, and then only partial.

8. The Standard Concrete Tank Company's allegations, likewise, are similar to those of Shaw and Blue & Pittman. Interest is claimed from sixty days after completion of their work on November 30, 1926. It was charged that not until February 19, 1927, did the owner ratify acceptance of the work and payment therefor was delayed until April 19, 1928.

9. Watson Company's defense was that during the periods of delay, the supervising architect had failed to accept the work of the respective subcontractors, and the owner of the building had not indicated what amounts of money it was willing to allow for and on account of their work, and therefore the delay in payments to said subcontractors was the fault of the owner and recovery, if any, should be had only against said owner. In the alternative, Watson Company prayed judgment over against the owner for any such recovery as might be had against it (Watson Company).

10. The Surety Company adopted the answer of Watson Company and all demurrers, denials, exceptions, pleas and averments contained in said answer.

11. Terminal Building Corporation, owner, answered that while it had entered into contract with Watson Company for the construction work in question, it did not enter into any contractual relations whatsoever with plaintiff or interveners, and denied any conspiracy existed between it and the architect, as the result of which, payments to be made by it were delayed.

12. The trial court submitted special issues to the jury which resulted in findings:

(a) There were delays in payment to Shaw, Blue & Pittman, and to Standard Concrete Tank Company of the respective amounts of money due them; such delays were caused by the acts or omissions of both Watson Company and the Terminal Building Corporation; that such delays resulted "in interest on said amounts, as damages," to said parties (plaintiff and interveners).

(b) That each of said parties should receive interest on the respective amounts due, as damages, from February 12, 1926; that said parties should have been paid such interest, as damages, from sixty days after the completion of the job undertaken by each respectively, and the work of O. L. Shaw was accepted in writing by the architect, on December 14, 1925.

Special issues submitted at the request of Watson Company were answered by the jury:

(c) That the delay in making payments by Watson Company to Shaw, Blue & Pittman, and Standard Concrete Tank Company, was occasioned by the acts or omissions of the Terminal Building Corporation.

13. The trial court, thereupon, on March 8, 1930, rendered judgment in favor of C. L. Shaw against the defendants Watson Company, the Terminal Building Corporation, and the American Surety Company, jointly and severally, in the sum of $8,669.46, a like judgment in favor of Blue & Pittman, in the sum of $3,185.98, and in favor of the partnership firm, Standard Concrete Tank Company, in the sum of $1,197.39. The court also rendered judgment over against the Terminal Building Corporation in favor of Watson Company and the American Surety Company, for the amounts recovered against them by plaintiff and interveners below, and for such part thereof as they may be compelled to pay by reason of such recoveries. The Terminal Building Corporation was cast for all costs of suit.

14. The Honorable Court of Civil Appeals was of opinion that no liability attached to the Terminal Building Corporation, that the case below was tried on a wrong theory, resulting in excessive judgments against Watson Company and the surety, that the jury should have been instructed to find for plaintiff and interveners against Watson Company and the surety, interest on the amounts due each, respectively, only from the dates and as fixed by certain agreements reached in January and February, 1927, and accordingly reversed and rendered in part, and reformed and affirmed in part, the judgment of the trial court.

As so rendered, recovery was denied against the Terminal Building Corporation and allowed against Watson Company and the American Surety Company, surety, in favor of C. L. Shaw in the sum of $4,575.03, in

favor of Blue & Pittman in the sum of $1,-560.65, and in favor of the Standard Concrete Tank Company in the sum of $697.90.

All parties, except the Terminal Building Corporation, applied for and were granted writs of error.

### Opinion.

The case was tried in the court below upon the theory that plaintiffs' causes of action are based upon tort and plaintiffs recovered judgment on such theory.

The Court of Civil Appeals determined the case on the theory that the relations of the parties were purely contractual and their causes of action arose from alleged breaches of contract.

The rule is well settled that a case on appeal must be decided upon the same theory as that on which it was tried in the court below. Wolff v. M., K. & T. Ry. Co. (Tex. Com. App.) 289 S. W. 1000; Askey v. Power (Tex. Com. App.) 36 S.W.(2d) 446; Kistler v. Latham (Tex. Com. App.) 255 S. W. 983; Brigman v. Holt & Bowers (Tex. Civ. App.) 32 S.W.(2d) 220 (writ of error refused); 3 Tex. Jur. 168.

If therefore the Court of Civil Appeals correctly concluded that the judgment cannot be supported on the theory that plaintiffs had a cause of action in tort, the judgment below should have been reversed and the cause remanded for a new trial on the correct theory. Smith v. Patton (Tex. Com. App.) 241 S. W. 109.

It cannot be doubted that the relations of the owner and Watson Company were based upon the contract between them, also that the relations of Watson Company and the subcontractors (plaintiffs below) were based upon their contracts, one with the other, and while there was no express privity of contract between the owner and the subcontractors, the subcontracts included the conditions of the main contract between the owner and Watson Company and it was made a part thereof in so far as the same pertained to the particular work thereunder to be performed. Hartwell v. Fridner (Tex. Civ. App.) 217 S. W. 231.

The main contract between the owner and Watson Company contemplated the construction of the building in question according to plans and specifications prepared by Lloyd R. Whitson, architect. It was provided therein (among other things) that the compensation for extra work ordered by the owner should be the actual cost to the contractor plus 10 per cent., the amount to be certified by the architect. It was provided also that progress payments be made by the owner to the contractor, on the 1st and 15th of each month, of 90 per cent. of the value, proportionate to the amount of the contract of labor and material incorporated in the work and of material stored at the site, as estimated by the architect and on certificates furnished by him to the owner; the retained percentage of such progress payments to cease when equal to $100,000, after which the estimates for such progress payments should be paid in full.

The fairness and disinterestedness of said architect was challenged by plaintiffs.

In Manett v. Terminal Building Corporation, 120 Tex. 374, 39 S.W.(2d) 1, 77 A. L. R. 1122, a similar contract involving the same building and the same architect, as here, was under consideration by the court, and it was held that the provisions of the contract providing for the fixing by the architect of the price of extra work and of determining the amount of work under the contract as it progressed were invalidated by reason of the financial interest of the architect to reduce the cost of the buildings. With those provisions of the contract eliminated there was no method of determining what amounts were properly due the contractor as the work progressed, nor what sums should be allowed and paid for extra work. Under such circumstances, the contractor had the right to abandon performance of the contract and seek the aid of a court for the purpose of determining the reasonable value of the labor performed and material furnished in the construction of the building. See, also, Childress v. Smith, 90 Tex. 610, 38 S. W. 518, 40 S. W. 389.

So here, the architect never having approved the estimates, either progress or final, if he is disqualified, as charged by plaintiffs, because of his interest in the contract, they were entitled to recovery from and as work was completed and in accordance with the contract, and default having been made in such payments, they were entitled to recover interest from that time (Galveston, H. & S. A. Ry. Co. v. Henry & Dilley, 65 Tex. 685; Funkhouser v. Preston Co., 290 U. S. 163, 54 S. Ct. 134, 78 L. Ed. ——); in this case the contract provided for the final payment to be made sixty days after the contract is fully performed upon certificate of the architect to the owner. Manifestly, if the architect is an interested party and disqualified as a fair and impartial actor, his arbitrary refusal to furnish

such certificate should not work to the detriment of those furnishing labor and material under the contract.

The extent of work done, material furnished, and the estimates therefor were to be fixed by the architect, and upon such estimates only could the subcontractors obtain compensation from Watson Company. 9 C. J. p. 776. They were bound by the provisions of the main contract (7 Tex. Jur. 641) and therefore interested to the extent of having a fair and impartial architect.

Until the architect furnished such estimates, Watson Company could not under its contract with them fix the amounts due. Alexander v. Good Marble & Tile Co. (Tex. Civ. App.) 4 S.W.(2d) 636; 9 C. J. p. 756, § 94. So long as this provision of the contract remained operative, the subcontractors as well as the contractor had to comply with its provisions and obtain the architect's certificate so required before their right to payments, either progress or final accrued—the subcontractors from the contractor and the latter from the owner. While the owner, under its contract, was not bound to the subcontractor, it was bound to Watson Company, and Watson Company in turn was bound to the subcontractors, so that the current flow of payments and continuance of the work were blocked because of an interested and disqualified (as alleged) architect refusing to perform in the true spirit and fair intent of the contract and subcontracts.

It is no answer to say that the owner took upon itself the adjustment and settlement of the claims, and therefore whether or not the architect's certificates were required as conditions precedent to payment becomes immaterial, because the complaint is that the owner acted in collusion with the architect for the very purpose of delaying payments and carrying out the related provisions of the contract, and delay did result.

The main contract also provided that at any time during the progress of the work, on notification from the chief engineer of the Gulf, Colorado & Santa Fé Railway Company to the contractor, verbally or in writing, that the substitution is to be made, said chief engineer or his representative shall be the architect, within the meaning of the contract documents as to the uncompleted work or such portions thereof as may be specifically mentioned, and shall have and exercise all the powers and authority of architect, and where the notice of substitution covers only a part of the work, written

notice may be subsequently given making substitutions as to any other part or all of the uncompleted work. The contract also provided that in case of the termination of the employment of the architect the owner shall appoint a capable and reputable architect whose status shall be that of the former architect.

The contract further provided that "the architect shall have general supervision and direction of the work" with authority to stop the work whenever necessary to insure the proper execution of the contract, but the owner shall not be liable by reason of any such stoppage, provided if the chief engineer of the Gulf, Colorado & Santa Fé Railway Company, or his representative, be architect, the owner shall not be relieved of responsibility, if the stoppage is wrongful against the contractor.

Here, it appears that the owner, through its representatives, with the chief engineer of the Gulf, Colorado & Santa Fé Railway Company, did undertake adjustment of the various claims, and the complaint is that their acts caused the delays, in delaying, postponing, and refusing to decide as to the reasonable cost of the work, and in controlling the architect and preventing him from accepting the work; the owner's defense to this contention is based on the alleged failure and refusal of the contractor to submit proper estimates in compliance with the terms of the contract.

Therefore, we think these were issuable facts and should have been submitted to the jury, because if the contractor failed to do the things required of him under the contract, to be done, the owner would be justified in refusing to make the prescribed payments.

No issue was submitted to the jury calling for a determination of whether the architect was fair and disinterested under the rule announced in Manett et al. v. Terminal Building Corporation, 120 Tex. 374, 39 S.W.(2d) 1, 77 A. L. R. 1122, nor whether the withholding of the certificate by the architect was fraudulent or in bad faith, or whether the owner waived the same, Alexander v. Good Marble Co. (Tex. Civ. App.) 4 S.W.(2d) 656.

If the owner waived such provisions of the contract requiring architect's certificates as conditions precedent to payments, certainly Watson Company likewise waived the same. On the other hand, if as held by the Court of Civil Appeals, final payment

was not due Watson Company because of the failure to furnish architect's final certificate, then likewise payment was not due the subcontractors because of their failure to furnish an architect's certificate.

These were questions of fact which we think should have been submitted to the jury.

If the architect's certification was waived and the parties undertook settlement of their differences, then the further question arises, whether the company acted in good faith in an honest endeavor to attain such settlement, and not because of and as a result of conspiracy with the architect to delay not only the payment but ascertainment of the amounts due. These, we think, were also questions of fact which should have been submitted to the jury.

It is settled law in this state that to induce a party to a contract to breach it to the damage of the other party is an actionable wrong. Raymond v. Yarrington, 96 Tex. 443, 72 S. W. 580, 73 S. W. 800, 62 L. R. A. 962, 97 Am. St. Rep. 914; Brown Hardware Co. v. Indiana Stove Works, 96 Tex. 453, 73 S. W. 800. Therefore, if the owner's unlawful acts induced or contributed to a breach of the contracts between Watson Company and the subcontractors, the owner would be liable, and whether denominated in tort or ex contractu is immaterial under the rule recognized in this state of the right to sue in one action for breach of contract and damages for a tort, where both claims grow out of the same transaction and are so connected that they may conveniently and appropriately be litigated together. Shirley v. Waco Tap Ry. Co., 78 Tex. 131, 10 S. W. 543; Houston & T. C. Ry. Co. v. Shirley, 54 Tex. 125; 1 Tex. Jur. 616.

The subcontractor, Shaw, is in a different position from the other plaintiffs below, in that he claims an acceptance of his work, in writing, by the architect, and recovery by him is sought by reason, among others, of such acceptance.

The surety company contends that the bond was executed for the sole benefit of the owner and no one else can maintain a suit on same to recover an unpaid claim.

This precise question was decided adversely to such contention in Cameron & Co. v. American Surety Co. (Tex. Com. App.) 55 S.W.(2d) 1032—the same form of bond was there involved.

We recommend that the judgments of the district court and Court of Civil Appeals be reversed and the cause remanded for a new trial.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.