The **RAMIREZ COMPANY, INC.,** Appellant,

v.

The **HOUSING AUTHORITY OF the CITY OF HOUSTON,** Appellee.

No. C14–88–273–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 24, 1989.

Rehearing Denied Sept. 21, 1989.

Macon D. Strother, Houston, for appellant.

Roger Rider, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, The Ramirez Company, Inc., appeals from a summary judgment in favor of appellee, the Housing Authority of the City of Houston, regarding appellant's contract and quantum meruit claims for work done at two projects known as the Westbury site and the Emnora Site.[1]  TEX.R. CIV.P. 166a (Vernon 1976 & Supp.1989). We reverse and remand with regard to appellant's claims regarding the Westbury Site and affirm the summary judgment with regard to the Emnora Site.

The facts of this case are as follows: In May 1981, appellee invited developers to submit bid proposals for the design, development and construction of an 105 unit low income housing project owned and selected by appellee ("Westbury Site") and an 80 unit low income housing project to be se-

---

1.  The record shows that the Westbury Site is also referred to as Project TX 24–P005–019 and the Emnora Site referred to as Project TX 24–P005–022.  However, because of the parties' inconsistencies in referring to these sites by their proper project numbers, these projects will only be referred to by the project name.

lected by the selected developer ("Emnora Site"). The projects were to be completed on a turnkey basis.[2] Pursuant to the turnkey method of development, the chosen developer is paid upon final construction under a Contract of Sale. Further, no obligation arises for payment of a developer's preconstruction work until the parties execute a Contract of Sale.

Once a developer is selected for a project, the developer is given three options under which to proceed: the basic, the modified, or the accelerated method of turnkey development.[3] According to the affidavit of appellee's employee, Julia Land, when a developer chooses the basic turnkey method, the parties enter into a preliminary contract of sale. Under the preliminary contract, appellee agrees to purchase the developer's working drawings and development site even if a Contract of Sale is never effectuated. However, a developer foregoes the protection of the preliminary contract of sale if he chooses the modified or accelerated turnkey method.

### WESTBURY SITE

Appellant submitted a proposal for the turnkey construction of the Westbury Site

and was subsequently notified by appellee on August 24, 1981 that it had been tentatively selected. On October 2, 1981, appellant met with appellee and HUD at a development conference. Therein, appellant was informed of all the necessary actions to be taken before execution of the Annual Contributions Contract ("ACC") between HUD and appellee and the Contract of Sale between appellant and appellee.[4]

Appellant commenced work upon the preliminary plans and working drawings necessary to begin construction upon the Westbury project. On September 10, 1982, appellee informed appellant that the Contract of Sale for the Westbury Site would be executed after HUD approved the ACC, HUD approved the development plans for the project, and appellant provided appellee with evidence of financing. On September 20, 1982, appellant informed appellee that it was experiencing difficulty in obtaining financing but expected financing offers within two weeks. On September 24, appellee responded that HUD had abated preparation of the ACC until appellant produced proof of financing. Appellee established October 4, 1982 as the deadline for submit-

**2.** A "turnkey" contract is technically a contract of sale. The developer (or seller) obtains his own funds for construction. There are usually no progress payments or liquidated damages provisions. The purchaser agrees to accept and pay for the units when they are completed and habitable, i.e., when the purchaser can "turn the key" and move in.

**3.** Pursuant to the HUD handbook, chapter 7, which was a part of appellee's developers packet, the three turnkey methods vary in sequence and are as follows:

  d. Basic Turnkey Procedure: Under this procedure, the following sequence occurs after the Development Conference:
  (1) Preliminary Documents.
  (2) Negotiation Conference to establish Tentative Purchase Price and for A & E services.
  (3) Development program and ACC
  (4) Preliminary Contract of Sale
  (5) Working Drawings and Specifications.
  (6) Contract of Sale Conference.

  e. Modified Turnkey Procedure: Under this procedure, the developer elects to proceed without a preliminary Contract of Sale (as in the accelerated procedure) but still has the benefit of reliance on his less costly proposal submission during final site approval actions

and other processing preparatory to the Development Conference (as in the basic procedure). The following sequence occurs under this procedure:
  (1) Preliminary Documents.
  (2) Negotiation Conference to establish Tentative Purchase Price.
  (3) Development Program and ACC.
  (4) Working Drawings and Specifications (may be submitted before Step (3)).
  (5) Contract of Sale Conference.

  f. Accelerated Turnkey Procedure: If prior to the Development Conference, the developer submits preliminary documents or at the Development Conference elects to proceed without preparation of preliminary documents, the accelerated turnkey procedure shall be agreed upon at the Development Conference and the sequence for subsequent steps is as follows:
  (1) Working Documents.
  (2) Negotiation Conference to establish Final Purchase Price.
  (3) Development Program and ACC
  (4) Contract of Sale Conference.

**4.** See 42 U.S.C.A. § 1437 et seq. regarding HUD's use of the Annual Contributions Contract to assist housing authorities' construction and operation of lower income housing projects.

ting the requested proof. On October 11, appellee's committee voted to terminate appellant as the developer for the Westbury Site. Appellee still owns the Westbury Site and is currently working with HUD towards the development of an elderly housing project on the site.

### EMNORA SITE

Appellant also submitted a proposal for the turnkey construction of the Emnora Site and was subsequently notified by appellee on January 13, 1982 that its bid proposal was tentatively selected. On January 25, appellant met with appellee and HUD for a development conference. The parties discussed the necessary actions for the execution of the ACC and the Contract of Sale. Appellant chose a non basic turnkey method of development for the Emnora Site.[5]

Appellant commenced work upon the preliminary plans and working drawings necessary for construction upon the Emnora site. However, on September 8, 1982, appellant informed appellee that it had decided to relinquish control of the Emnora site and not proceed with the proposed turnkey development thereon. Appellant's decision to forfeit the development of the Emnora site was made before the parties executed the Contract of Sale. As a result, appellant never sold the site to appellee nor were any housing units constructed upon the site. Appellee subsequently lost earmarked HUD funding for the contemplated project.

In October 1983, appellant filed suit against appellee claiming breach of contract and/or quantum meruit for work performed at the Westbury and Emnora Sites.

In March 1985, appellee filed a motion for summary judgment which was granted by the trial court over two years later on December 22, 1987. On appeal, the standards for reviewing a motion for summary judgment are as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue, precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in favor of the non-movant.

*Nixon v. Mr. Property Management,* 690 S.W.2d 546 (Tex.1985); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979).

### WESTBURY SITE CONTRACT CLAIM

■ Appellee contends that appellant failed to meet two conditions precedent to be entitled to seek recovery under the written Contract of Sale. The first contingency was appellant's compliance with appellee's requested proof of financing so that HUD would execute the ACC. The second contingency was the execution of the Contract of Sale itself. According to appellant's president, Mr. Ramirez, appellant had fulfilled these and all necessary conditions to be entitled to the executed Contract of Sale. However, appellee had "improperly procured" the Westbury Site, causing public litigation, and as a result, appellant lost its lender's financing commitment.[6] Ramirez suggests that the timing of the liti-

---

5. The record does not disclose whether the method was modified or accelerated. However, appellant does not refute appellee's contention that appellant selected a method other than the basic turnkey development.

6. Despite appellee's contention to the contrary, appellant's response did raise the issue of improper procurement and such issue is not raised for the first time on appeal. Mr. Ramirez's affidavit, along with the deposition of Julia Land, states that the local Westbury Civic Association pursued litigation to enjoin appellant

and appellee for, inter alia, failure to properly hold a public hearing regarding the proposed construction upon the Westbury site. See Tex. Loc.Gov't Code §§ 392.053, 392.054 (Vernon Pamph.1988). However, the affidavit of Mr. Phillips, appellee's executive director, states that the October 4 deadline was established several days before the Westbury Civic Club initiated litigation. Appellant and appellee were ultimately enjoined within a two weeks after the October 4 financing deadline. Whether or not this is so is for the fact-finder.

gation and the problem with its lender's commitment caused appellee to unilaterally impose the financing · requirement. Ramirez contends that appellant, nevertheless, did comply with such imposed unilateral condition.[7] Appellant also provided exhibit "A" which contains a resolution by appellee's committee. Pursuant to appellee's resolution, appellee approved appellant as the site developer and, *subject to HUD's execution of the ACC*, authorized the instant parties' execution of the Contract of Sale. Resolving all doubts in favor of appellant, it appears that appellee had already authorized the Contract of Sale and all that remained was the execution of the ACC upon appellant's proof of financing. Appellant produced sufficient evidence to demonstrate that a material fact issue exists as to whether it was entitled to the contemplated Contract of Sale[8] *Frank B. Hall & Co., Inc. v. Buck*, 678 S.W.2d 612, 629 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Industrial Disposal Supply Co., Inc. v. Perryman Bros. Trash Service, Inc.*, 664 S.W.2d 756, 765 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.); 17 C.J.S., *Contracts,* § 49 p. 695 (1963). *See also U.S. v. Purcell Envelope Co.*, 249 U.S. 313, 39 S.Ct. 300, 63 L.Ed. 620 (1919). *But see, Gordin v. Shuler*, 704 S.W.2d 403, 407 (Tex.App.—Dallas 1985, writ ref'd n.r. e.). Appellee failed to sustain its burden to show its entitlement to summary judgment on appellant's Westbury Site contract claim.[9]

## WESTBURY SITE QUANTUM MERUIT

■ Appellee also contends that appellant is precluded from recovery under quantum meruit because appellant expressly agreed to bear the cost of its preconstruction work until the Contract of Sale was executed. Because a material fact issue exists as to whether appellant was entitled to the benefit of the Contract of Sale "but for" its wrongful termination, appellant may also be entitled to elect recovery under quantum meruit. *Kleiner v. Eubank*, 358 S.W.2d 902, 905 (Tex.Civ.App. —Austin 1962, writ ref'd n.r.e.). *See also, Davidson v. Clearman*, 391 S.W.2d 48, 51 (Tex.1965); *Kittyhawk Landing Apartments III v. Anglin Const. Co.*, 737 S.W.2d 90, 92 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *University State Bank v. Gifford–Hill Concrete Corp.*, 431 S.W.2d 561, 574 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.); 13 Am.Jur.2d, *Building and Construction Contracts* § 105, p. 99 (1964); 66 Am.Jur.2d, *Restitution and Implied Contracts* § 73, p. 1018 (1973).

■ Appellee next asserts that there can be no recovery in quantum meruit because it has not used the fruits of appellant's work. Mr. Ramirez's affidavit states that appellant performed such work at appellee's request and that appellee has used appellant's work. *See e.g. Triland Inv. Group v. Tiseo Paving Co.*, 748 S.W.2d 282, 284 (Tex.App.—Dallas 1988, no writ). Importantly, appellee's own affidavits state that appellee still owns the Westbury site

---

7. Appellant's exhibit "C" contains a loan commitment for financing on the Westbury project, dated October 4. However, the lender's financial commitment was only open until October 8. Appellant being terminated on October 11, a fact issue exists as to whether appellant's proof was intentionally disregarded, particularly in light of the timing of the Westbury Civic Club litigation. Although on appeal, appellee contends that appellant failed to prove the existence of an express oral agreement to pay for appellant's preconstruction work, appellee's own evidence suggests that once the parties had entered into the Contract of Sale, appellee would be under such an obligation. Further, Ms. Land stated that HUD had approved the development program and appellee had signed the initial ACC and returned it to HUD before appellant's termination.

8. Because of our disposition herein, we do not reach appellee's contention under 7–16(a)(3) of the HUD handbook. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–937 (Tex.1972). See and compare, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

9. However, pursuant to article 1269k Sec. 20 of the Texas Revised Civil Statutes, in effect at the time of this occurrence, no charge or lien could be placed upon real property of a housing authority. Tex.Rev.Civ.Stat. article 1269R Sec. 20 (repealed 1987). See now Tex.Loc.Gov't Code § 392.001 et seq. (Vernon Pamph.1988).

and is currently planning another housing project on that site. That appellee has not yet used appellant's work does not support appellee's subjective determination that appellee received no benefit. *Accord, Beaumont Enterprise & Journal v. Smith,* 687 S.W.2d 729 (Tex.1985). Under traditional teachings of quantum meruit, a worker is entitled to be reasonably compensated for his services performed at the time such work was performed at the recipient's request. *Black Lake Pipe Line Co. v. Union Constr. Co.,* 538 S.W.2d 80 (1976). The reasonableness of such compensation and the value to the recipient, if any, are properly matters for the fact-finder to decide.[10] 66 Am.Jur.2d, *Restitution and Implied Contracts* § 28 p. 973 (1973). *See also, Manett, Seastrunk & Buckner v. Terminal Building Corp.,* 120 Tex. 374, 39 S.W.2d 1, 5 (Tex.1931); *Shafer Plumbing & Heating v. Cont. Air.,* 742 S.W.2d 717, 719 (Tex.App.—San Antonio 1987, no writ); *Beeman v. Worrell,* 612 S.W.2d 953, 957 (Tex.App.—Dallas 1981, no writ); *Texas Assoc. v. Joe Bland Const. Co.,* 222 S.W.2d 413, 422 (Tex.Civ.App.—Austin 1949, writ ref'd n.r.e.). Hence, appellee failed to sustain its burden to show that no material fact issues exists as to appellant's possible entitlement to alternative recovery under quantum meruit.

### Emnora Site Contract Claim

■ It is undisputed that appellant forfeited the opportunity to develop the Emnora site before the parties executed the Contract of Sale. Appellee contends that appellant again failed to fulfill necessary conditions to be entitled to the Emnora Site Contract of Sale. Appellant's answer contends that appellee caused appellant's inability to perform. Mr. Ramirez stated that

appellee improperly procured the site and that such improper procurement caused unfavorable publicity which, in turn, caused the loss of its lender's interim financing commitment. Ramirez also stated that appellee failed to provide previously promised tax-exempt financing.

That appellee failed to provide tax exempt financing is irrelevant to the resolution of this case. *Borg–Warner Acceptance Co. v. C.I.T. Corp.,* 679 S.W.2d 140, 144 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.). Appellant did not set forth any facts to show that such exempt arrangements were integral to the lender's commitment. Instead, appellant contended that unfavorable publicity surrounding appellee's "improper procurement" of Emnora caused the loss of the lender's financing commitment. The issue of appellee's improper procurement was previously discussed with regard to the Westbury site, i.e., appellee's failure to provide a public hearing. However, in this instance, appellant did not dispute the affidavit of appellee's executive director, Mr. Phillips, which stated that a public hearing was properly conducted for the Emnora site, nor did appellant produce any evidence to the contrary. Further, that unfavorable publicity may have occurred did not discharge appellant's duty to arrange its own financing and assume the risks of unforeseen delays. *Cf.* Calamari & Perillo, *Contracts,* § 13.8 (2d ed. 1977); Tex.Jur.3rd § 292, p. 504–505 (1981). *Accord, First National Bank of Aberdeen v. Indian Industries Inc.,* 600 F.2d 702 (8th Cir.1979). Pursuant to the turnkey method chosen, appellant expressly assumed the risk of noncompensation until the existence of the Contract of Sale. The trial court did not err by granting

---

**10.** Appellee's assertion that it has received no benefit is not the determinative factor in assessing a claim for quantum meruit. Recovery may be had with or without regard to the benefit realized by the recipient depending on the recipient's conduct in obtaining such services. 66 Am.Jur.2d, Restitution and Implied Contracts § 28; Restatement, Restitution § 152, § 155. Generally, on a quantum meruit theory, the "employee" is entitled to show, as part of its proof, the actual cost of its work, leaving it to both parties to respectively show the reasonable-

ness or unreasonableness of those costs. 66 Am.Jur.2d, Restitution and Implied Contracts § 89 at 1031; D. Dobbs, Remedies § 13.2 (1973). As a defensive matter, the value to be placed upon such services (or, the benefit,) is for the fact-finder. 66 Am.Jur.2d, Restitution and Implied Contracts § 90 at 1032. See also, *Peavy v. Pellandini,* 551 P.2d 610, 97 Idaho 655 (1976); *Namekagon Dev. Co., Inc. v. Bois Forte Reservation Housing Authority,* 395 F.Supp. 23 (D.Minn. 1974), affirmed, 517 F.2d 508 (8th Cir.1975); D. Dobbs, Remedies § 13.4, p. 992–993.

summary judgment in favor of appellee as to appellant's Emnora Site contract claim.[11]

### EMNORA SITE QUANTUM MERUIT

█ Because appellant expressly assumed the risk of noncompensation until the existence of the Contract of Sale, the law will not impose an implied obligation under quantum meruit which is contrary to an express undertaking.[12] 17 C.J.S., *Contracts* § 5, pp. 564–566 (1963); *Knox v. Townes*, 470 S.W.2d 290, 292 (Tex.Civ.App.—Waco 1971, no writ). *See also Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 86 (Tex.1976); *Tatum v. Tatum*, 606 S.W.2d 31, 33 (Tex.Civ.App.—Corpus Christi, 1980, no writ). The trial court did not err by granting summary judgment for appellee as to appellant's Emnora Site quantum meruit claim.

Accordingly, the judgment of the trial court is reversed and remanded as to appellant's contract and quantum meruit claims for work performed at the Westbury site and the judgment is affirmed in all respects with regard to appellant's contract and quantum meruit claims against appellee for work performed at the Emnora site.

---

11. Impossibility of performance, commercial impracticability, or frustration of purpose are more generally known as excuses to a party's (or the parties) obligation(s) to perform. However, the occurrence of such matter must be substantially burdensome and not merely personal. Calamari & Perillo, Contracts §§ 13.8–13.12.

12. At common law, there are three recognizable contractual arrangements: First, there is the express contract, written or oral, wherein the parties expressly agree regarding a transaction. Second, there is the implied in fact contract, called quantum meruit, wherein there is no express agreement but the conduct of the parties implies an agreement to contract from which an obligation in contract exists. The third category is called an implied in law contract, or quasi contract. Such contract is not a contract at all, but an obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent or the agreement of the parties. 17 C.J.S., Contracts §§ 2, 4, 6. Although the movant did not address the theory of recovery under quasi contract, appellant did not expressly raise this issue in its response. Therefore the possible existence of such recovery cannot be considered for the first time on appeal as grounds for reversal. *State Bd. of Ins. v. Westland Film Indus.*, 705 S.W.2d 695, 696 (Tex.1986); Tex.R.Civ.P. 166–A(c). See also, *Holmes v. Dallas Int'l Bank*, 718 S.W.2d 59 (Tex.App.—Dallas 1986, writ ref'd n.r. e.).